


FILED

DEC 21 2018

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) LENORA RODRIGUEZ, ) | |
| ) | |
| Plaintiff, ) | **18 CV 666 TCK - JFJ** |
| ) | |
| v. ) | Case No. |
| ) | |
| 1) ZURICH AMERICAN INSURANCE ) | |
| COMPANY AND ) | |
| 2) WPX ENERGY SERVICES COMPANY LLC ) | ATTORNEY'S LIEN CLAIMED |
| ERISA WELFARE BENEFIT PLAN ) | |
| ) | |
| Defendants. ) | |

### COMPLAINT

COMES NOW the Plaintiff, Lenora Rodriguez, by and through her attorneys, The Brune Law Firm by Kenneth L. Brune and Timothy E. Houchin, and in support of her claims against the Defendants, Zurich American Insurance Company ("Zurich") and WPX Energy Services Company, LLC ERISA Welfare Benefit Plan (the "Plan") identified as plan number GTU 4848482, alleges and states as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is premised upon ERISA, 29 U.S.C. § 1132(a)(1) and (f), which grants United States District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan.

2. Venue is proper in this District Court pursuant to ERISA, 29 U.S.C. § 1132(a)(2) and 28 U.S.C. § 1391.

3. At all times material and relevant herein, Lenora Rodriguez is an individual residing in the State of Oklahoma.

4. At all times material and relevant herein, Lenora Rodriguez' now deceased spouse, Luis



       Rodriguez was a resident of the State of Oklahoma and employed by WPX Energy Services, LLC ("WPX").

5. At all times material and relevant herein, the Plan was issued and in force and effect in the State of Oklahoma providing insurance coverage to WPX employees in the State of Oklahoma.

6. At all times material and relevant herein, Luis Rodriguez was a participant and beneficiary under the Plan.

7. The WPX Energy Services Company LLC ERISA Welfare Benefit Policy constitutes an ERISA plan.

8. At all times material and relevant herein by the terms of the Plan, Zurich is the administrator of the Plan within the meaning of ERISA, 29 U.S.C. § 1002 (16)(A) and has the sole authority to apply the terms of the Plan.

## GENERAL STATEMENT OF FACTS

9. Luis Rodriguez was a long-time employee of WPX Energy Services Company, LLC.

10. Luis Rodriguez served as an engineer for WPX and earned a salary of over one hundred and thirty thousand dollars ($130,000.00) per year.

11. WPX offered the Plan to its employees and Luis Rodriguez paid additional premiums to Zurich to increase Luis Rodriguez' Accidental Death and Dismemberment coverage to one million dollars ($1,000,000.00) in benefits, payable to his wife, Lenora Rodriguez as the sole beneficiary of the Plan and Policy.

12. On or about December 17, 2016, Luis Rodriguez slipped on ice at his residence and severely injured his leg.

13. Luis Rodriguez was hospitalized and eventually had his leg amputated on or about March 22, 2017.

14. The Policy covers both a loss due to dismemberment as well as death.

15. Due to the injury sustained on the date of loss, December 17, 2016, Luis Rodriguez died on April 10, 2017.

16. In its "Large Loss Report", Zurich stated:

> Full Loss Description: On December 17th, he was plugging in Christmas lights and slipped and fell on porch. He fractured leg and ankle. He died on 4/10/17 from sepsis and cellulitis.

17. A "Covered Loss" is a defined term in the Plan and constitutes a specific incident which triggers coverage under the Plan.

18. In multiple internal documents, Zurich identified the "Date of Loss" (the "Covered Loss" identified in the Plan) as December 17, 2016.

19. The Plan states:

> If a Covered Person suffers a loss of life as a result of a Covered Injury, We will pay the applicable Principal Sum. The death must occur within 365 days of the Covered Injury.

20. Luis Rodriguez was the "Covered Person" under the Plan.

21. Luis Rodriguez died within 365 days of his injury.

22. Under the Policy and the Plan, the "Principal Sum" was one million dollars ($1,000,000.00).

23. The Plan also states that:

> If an Injury to a Covered Person results in any of the following Covered Losses, We will pay the benefit amount shown. The Covered Loss must occur within 365 days of the Accident.

> The benefit amounts are based on the Principal Sum of the person suffering the Covered Loss. ...
>
> Covered Loss of:
> ... One Hand; One Foot; or Sight of One Eye – 50% of Principal Sum...
>
> For purposes of this benefit:
>     1.    Covered Loss means:
>         a.    For a foot or hand, actual severance through or above an ankle or wrist joint; ...

24. The Plan further states that:

> A loss will not be a Covered Loss if it is caused by, contributed to, or results from: ...
> 4. illness or disease, regardless of how contracted; medical or surgical treatment of illness or disease; or complications following the surgical treatment of illness or disease; except for Accidental ingestion of contaminated foods; ...

25. On or about May 3, 2017, the Plaintiff, Lenora Rodriguez, submitted a claim to Zurich and requested payment under the Accidental Dismemberment and Death benefits set forth in the Plan, which names Luis Rodriguez' wife, Lenora Rodriguez, as the sole beneficiary to receive any benefits under the Plan.

26. Zurich is biased in its review of Luis Rodriguez' death as Zurich is both the payor AND the decision maker as to covered claims under the Plan.

27. Immediately after receiving Lenora Rodriguez' claim, Zurich identified a risk of loss and reserved one million dollars ($1,000,000.00) for Lenora Rodriguez' claim.

28. Zurich, after receiving Lenora Rodriguez' claim, then sought to hire multiple people to deny the claim.

29. Shortly after receiving the claim, Zurich lowered the reserve to ten dollars ($10.00).

30. By letter dated December 29, 2017, Zurich informed Lenora Rodriguez of Zurich's decision to deny the Lenora Rodriguez' claim.

31. After receiving Lenora Rodriguez' claim, Defendant Zurich continued in its letter to the her dated December 29, 2017 and in multiple internal communications, to determine that the "Date of Loss" was December 17, 2016.

32. Lenora Rodriguez sought an internal review of Zurich's decision as required by the terms of the Plan.

33. By letter dated April 18, 2018, Zurich informed Lenora Rodriguez of its decision upholding its denial of Lenora Rodriguez' claim for benefits under the Plan.

34. Only after Lenora Rodriguez made her claim for death benefits and an internal review did Zurich CHANGE the Date of Loss to April 10, 2017.

35. Plaintiff has properly complied with all requirements prior to the filing of this Complaint under the Plan and ERISA, including an internal appeal of the denial of Accidental Death benefits pursuant to 29 U.S.C. § 1133.

36. 29 U.S.C. § 1132(a)(1)(B) authorizes Lenora Rodriguez to recover benefits due under the terms of the Plan, to enforce her rights under the terms of the Plan, and/or to clarify Lenora Rodriguez' right to future benefits under the terms of the Plan.

37. Zurich's evaluation of the December 17, 2016 incident demonstrates serious procedural irregularities.

38. Zurich's instructions for "independent" medical review did not properly state the date of the Covered Loss as defined in the Plan and determined by Zurich to be December 17, 2016.

39. Zurich's instructions for "independent" medical review did not accurately reflect the standard of review to be conducted under Oklahoma law.

40. Zurich's request to Sandra Bernard at the "independent" medical review office stated:

> *Mr. Rodriguez died from sepsis. He had a history of liver failure, kidney failure and was on dialysis.* Not sure what kind of doctor to review this claim. Maybe an internist? I sent 11 sets of documents. It looks like I have sent some before. I think I had this one on hold.
> Here are the questions:
> - Was his death caused by, contributed to or results from an illness or disease regardless of how contracted? If so, please list his medical conditions.
> - Was his death caused by a covered injury which means in [sic] injury directly caused by accidental means which is *independent* of all other causes?
>
> (emphasis added)

41. Zurich, in its instructions to its hired consultant, does not state in its instructions that the term "independent of all other causes" applies only to the cause of the accident and not to the cause of death as set forth in the Policy.

42. Zurich does not state in its instructions to its hired consultant that the Covered Loss must be free of a "substantial" contribution from a cause other than the accident.

43. Zurich's request for review stated exactly how Zurich had already determined that Luis Rodriguez died and did not constitute a request for "review" at all, but a confirmation of Zurich's own findings.

44. Zurich's request for review did not seek *any* review of Luis Rodriguez loss of his leg due to the accident and none of the medical statements submitted by Dr. Habel address this Dismemberment claim.

45. Zurich paid Dr. Habel five thousand three hundred and fifty dollars ($5,350.00) to determine that no coverage applied and Zurich's instructions to Dr. Habel made it impossible for Dr. Habel to reach a conclusion consistent with the applicable standard as set forth in the Policy as to the causes of the death of Luis Rodriguez.

46. None of the records produced by Zurich, nor the medical review, demonstrate any applicable exceptions to the Plan for the Covered Loss (Luis Rodriguez' fall on ice) that occurred on December 17, 2016.

47. Zurich conducted a skewed and self-serving investigation and reviewed facts with an emphasis on denying Lenora Rodriguez' claim.

48. Zurich then altered its own determination of the Date of Loss to conform to Zurich's intended result and thereby denied the claim.

49. As written and interpreted by Zurich, the Plan would NEVER allow for a covered loss to occur unless a covered person was killed instantly as any subsequent incident is deemed to constitute a "contributing" factor.

50. Zurich also denied the claim for Dismemberment benefits by asserting that Luis Rodriguez himself had to make such a claim, ignoring Lenora Rodriguez' position as Luis Rodriguez' wife with a right to raise this claim on his behalf.

51. By denying the payment of Accidental Death benefits to Lenora Rodriguez, the Defendants and the Plan have violated and continue to violate ERISA, 29 U.S.C. § 1132(a)(1)(B).

52. By failing to properly investigate and advise the "independent" medical review, Zurich's irregularities require de-novo review.

53. As a result of the denial of the Accidental Death benefits due and owing to Lenora Rodriguez under the terms of the Plan, Lenora Rodriguez has been damaged in the amount in excess of one million dollars ($1,000,000.00).

## FIRST CAUSE OF ACTION:
## ENFORCEMENT OF TERMS OF PLAN – ACTION FOR UNPAID BENEFITS

For her First Cause of Action against the Defendants, Lenora Rodriguez alleges and states as follows:

54. The allegations contained in paragraphs 1 through 53 are incorporated by reference as if set forth at length herein.

55. The Plan is a contract.

56. Prior to his death, Luis Rodriguez performed all of his obligations under the terms of the contract.

57. Lenora Rodriguez has performed all of her obligations as a beneficiary to submit her claim under the terms of the contract.

58. 29 U.S.C. § 1132(a) states:

A civil action may be brought –

    1. By a participant or beneficiary

A. For the relief provided in subsection (c) of this section, or

B. To recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

59. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132 (a)(1)(B).

60. In accordance with 29 U.S.C. § 1132, Lenora Rodriguez is entitled to benefits under the Plan based upon her Luis Rodriguez' Accidental Dismemberment and subsequent Death while covered under the terms of the Plan.

61. Luis Rodriguez fell on ice on December 17, 2016, the date of the "Covered Loss" as identified by the Plan and determined by Zurich, and subsequently received treatment for his injuries which resulted in the amputation of his leg.

62. Luis Rodriguez subsequently died as a result of the injuries he received in the December 17, 2016 fall.

63. There is no evidence that any condition of Luis Rodriguez substantially contributed to the "Covered Loss" on December 17, 2016.

64. None of Luis Rodriguez' medical conditions caused him to slip and fall and receive injuries which subsequently caused his loss of his leg and subsequent death.

65. The Defendants have refused to provide Lenora Rodriguez with her Dismemberment and Accidental Death benefits and are, therefore, in breach of the terms of the Plan and ERISA.

66. As a direct and proximate cause of this Breach, Lenora Rodriguez has lost the principal and the use of her rightful Dismemberment and Accidental Death benefits.

## SECOND CAUSE OF ACTION:
## ATTORNEY FEES AND COSTS

For her Second Cause of Action against the Defendants, Lenora Rodriguez alleges and states as follows:

67. The allegations set forth in paragraphs 1 through 66 are incorporated by reference as if set forth at length herein.

68. Under the standards applicable to ERISA, Rodriguez deserves, and is entitled, to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g),

69. Defendants have the ability to satisfy an award of attorney fees and costs.

70. Lenora Rodriguez' conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

71. The Defendants have acted in bad faith in denying Lenora Rodriguez' claim for benefits under the terms of the Plan.

72. An award of attorney fees and costs against the Defendants will deter others acting under similar circumstances.

## CLAIM FOR RELIEF

WHEREFORE, the Plaintiff, Lenora Rodriguez, requests that this Court enter Judgment in favor of Lenora Rodriguez and against each of the Defendants as follows:

A. Declare, adjudge and decree that Lenora Rodriguez is entitled to Accidental Death benefits as calculated under the terms of the Plan;

B.  Declare, adjudge and decree that Lenora Rodriguez, as representative of Luis Rodriguez' estate, is entitled to dismemberment benefits under the terms of the Plan;

C.  Award the Estate of Luis Rodriguez Dismemberment benefits;

D.  Award Lenora Rodriguez Accidental Death benefits;

E.  Award Lenora Rodriguez the costs of this action and reasonable attorneys' fees;

F.  Award Lenora Rodriguez pre-judgment interest from the date of Defendants' breach of contract at the rate of 15%, the Oklahoma statutory rate for pre-judgment interest;

G.  Award Lenora Rodriguez post-judgment interest at the Oklahoma statutory rate; and

H.  Award such other relief as this Court deems just and reasonable at law or in equity.

Respectfully submitted,

Kenneth L. Brune, OBA No. 1249
Timothy E. Houchin, OBA No. 19127
900 Reunion Center
Nine East Fourth Street
Tulsa, OK  74103
(918) 599-8600
ATTORNEYS FOR PLAINTIFF
LENORA RODRIGUEZ

11